A98A0746. SCOTT v. THE STATE.
(501 SE2d 255)

McMURRAY, Presiding Judge.

Following a jury trial, defendant Timothy Amos Scott was convicted of misdemeanor possession of marijuana, driving with an expired driver's license, and violating a local loud music ordinance. In this direct appeal, defendant contends the trial court erred in denying his motion to suppress, his motion to recuse the trial judge, and his challenge to the jury array. *Held*:

1. Defendant was stopped while driving a vehicle registered to someone else. He contends marijuana discovered during an inventory search of the vehicle should have been suppressed because the search was a ruse and because the Bainbridge police had no official policy

pertaining to inventory searches of impounded cars.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *State v. Diamond*, 223 Ga. App. 164, 166 (477 SE2d 320). Only the arresting officer testified at the suppression hearing. Viewed in the light most favorable to the trial court's ruling, the record reveals these pertinent facts:

During the evening of May 30, 1997, Bainbridge Police Officer Patrick Henry Thomas heard loud music coming from an approaching car. Because the music was audible from a distance in excess of 50 feet in violation of a local ordinance, Officer Thomas followed and initiated a traffic stop by turning on his blue lights. The driver pulled over and stopped the car in a Hardee's parking lot. Officer Thomas asked to see the driver's license and identification. Defendant handed over proof of insurance, but could not produce a driver's license. Defendant identified himself as Timothy Amos Scott and explained that he had a license issued by the State of Kentucky but that he had left this license at his house. Officer Thomas called his dispatcher to verify Scott's status as a licensed driver. After two inquiries covering Kentucky, Georgia, Florida, and Alabama, the dispatcher informed Officer Thomas that defendant's license was not on file.

While the dispatcher was performing the license check, Officer Thomas noticed that defendant "was acting very nervous, agitated, jittery." Suspecting the possible presence of a weapon or contraband, Officer Thomas requested permission "to search the vehicle." At that time, defendant told Officer Thomas "the vehicle did not belong to him, that it belonged to a Mr. Jimmy Ard. . . ." Defendant initially consented orally to a search, but then withdrew that consent when Officer Thomas explained that defendant could be charged with anything illegal found within the car even though he was not the owner.

Because the dispatcher was unable to find proof that defendant was a licensed driver, Officer Thomas arrested him and called a wrecker to tow the car to an impound lot. Although the Bainbridge Police Department has no official policy pertaining to inventory searches following impoundment of a vehicle, Officer Thomas routinely performs an inventory search for valuables when he impounds a vehicle. Similarly, no written police department policy or standards regarding the decision to impound a vehicle were established, but Officer Thomas confirmed it is the usual procedure to have the vehicle towed if a lone driver has either no license or is driving on a suspended license. Defendant never requested a private towing service or asked to call the owner to remove the car.

During the inventory search, Officer Thomas found in the console a "corncob pipe with some burnt substance in it, some burnt leafy substance in it, some lighters, some rolling papers, [and] some green leafy substance scattered up all inside the console itself. . . ." On the "right-hand side of the vehicle, in the backseat there was a zipper console, and inside that zipper console, was a clear plastic bag of green leafy substance, and with that bag was additional rolling papers to roll a cigarette with."

"While [Officer Thomas] was en route with [defendant] to the Bainbridge Public Safety Department, the owner of the vehicle showed up at the scene at Hardee's parking lot and identified himself as being Mr. Jimmy Ard and identified that this vehicle was his." Consequently, the car was not towed. Because defendant insisted he had a Kentucky license, Officer Thomas asked a different dispatcher to run a third license check. This dispatcher reported that defendant once held a Kentucky license, but it had expired.

"In the interests of public safety and as part of what the [United States Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody. The state may inventory the contents of a car that has been lawfully impounded. Justification of an inventory search is thus premised upon the validity of the impoundment. The police may not use an impoundment or inventory as a medium to search for contraband. The individual's right of privacy is superior to the power of police to impound a vehicle unnecessarily. Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. In each instance, the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment. The existence of a department policy is relevant but not determinative. The question thus presented is whether the impoundment of [the] car was reasonably necessary." (Citations and punctuation omitted.) *State v. Lowe*, 224 Ga. App. 228, 229 (480 SE2d 611) (1997).

In this case, defendant's arrest was based upon probable cause that he was an unlicensed driver. Defendant was the lone occupant; there is no evidence that anyone else was present and authorized to take possession. There was no evidence that defendant requested any alternative disposition to impoundment or identified to Officer Thomas any method of reaching the owner. Although the vehicle did not pose a hazard to other drivers since it was parked off the roadway and on private property, the vehicle and its contents were exposed to a risk of theft or damage. These circumstances support the trial court's finding that impoundment was reasonably necessary to safeguard the car and its contents. *Gooden v. State*, 196 Ga. App. 295, 297 (395 SE2d 634) (whole court); *Pierce v. State*, 194 Ga. App. 481 (1),

482 (391 SE2d 3).

2. Defendant next contends the trial court erred in denying his motion to recuse.

On August 20, 1997, the trial judge entered an order establishing the Internal Operating Procedures (IOP) of the State Court of Decatur County. On September 11, 1997, defendant filed an objection to the IOP, contending it violated his constitutional rights. A hearing was not held on this motion. Rather, on September 19, 1997, defendant and two other defendants in unrelated criminal cases filed in Superior Court a pleading styled "Petition for Writ of Prohibition Nisi" against the trial judge. On the same day, defendant filed his motion to recuse, asserting the trial judge may be biased against him because he filed the petition. On September 22, 1997, the trial court orally denied the motion, finding it untimely. On October 9, 1997, the superior court disposed of the petition for a writ of prohibition, finding that the order establishing the IOP had been rescinded, which rendered the petition moot. On October 14, 1997, defendant re-filed an identical motion to recuse, again stating as the basis for recusal his having filed the petition for a writ of prohibition. This motion was denied as untimely and legally insufficient.

Pretermitting whether either motion was timely, in substance both must fail. "After being presented with a motion for recusal under [Uniform Superior Court Rule ("USCR")] 25.1, the trial judge has the duty to determine whether, assuming the truth of the facts alleged, a reasonable person might conclude that the judge harbors bias, stemming from an extrajudicial source, which is of a nature and intensity as would interfere with the exercise of impartial judgment. *Wellons v. State*, 266 Ga. 77, 88 (18) (463 SE2d 868) (1995). If the affidavit is found to be sufficient, then the matter is referred to another judge for a hearing. See USCR 25.3; *State v. Fleming*, 245 Ga. 700 (267 SE2d 207) (1980)." *Berry v. State*, 267 Ga. 605, 607 (3) (481 SE2d 203). Here, the only factual basis for bias alleged in the affidavit as submitted by defendant's counsel is that defendant "filed a Petition For Writ of Prohibition against James M. Pace, Jr., Judge of State Court of Decatur County, Georgia which suit alleges that James M. Pace, Jr., exceeded his jurisdiction and authority in propounding the Internal Operating Procedures for the State Court of Decatur County, Georgia." This fails to set forth with the requisite specificity any conduct of the trial court judge demonstrating bias or prejudice against defendant Scott. Assuming the allegations are true, the affidavit contains bare conclusions and opinions which are not legally sufficient to warrant further hearing on the motion. Consequently, the trial court did not err in denying the motion summarily. *Berry v. State*, 267 Ga. 605, 607 (3), 608, supra. The mere filing of a petition for writ of prohibition, without a showing of personal bias or

prejudice, does not warrant recusal. *Henry v. James*, 264 Ga. 527, 533 (4) (449 SE2d 79). See also *Mapp v. State*, 204 Ga. App. 647, 649 (4) (420 SE2d 615).

3. The third enumeration contends the trial judge erred in denying defendant's challenge to the array. He argues the jurors called were ineligible pursuant to OCGA § 15-12-4 because they had been called to serve at the previous term of court. This contention, however, is not supported by the record.

Defendant's case was set for September 23, 1997. To accommodate defendant's attorney, who had a conflict on that date, the trial judge adjourned the September 23, 1997 jury session until October 28, 1997. "The judge may, during the term of court, adjourn the court to such time as he may think fit." OCGA § 15-6-22 (a). Further, the judge may "hold the jurors over to the adjourned session. Since it is presumed that the trial court proceeded legally, it is incumbent on the defendant to show that the trial court was not meeting pursuant to adjournment. They have not done so here. Accordingly, we find this enumeration of error to be without merit." (Citation, punctuation, and emphasis omitted.) *Gunter v. State*, 243 Ga. 651, 654 (1) (256 SE2d 341). See also *Harris v. State*, 191 Ga. 243, 254 (7) (12 SE2d 64).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED APRIL 1, 1998 —
RECONSIDERATION DENIED APRIL 21, 1998 —

*Gilbert J. Murrah*, for appellant.
*Kirbo & Kendrick, Ben Kirbo*, for appellee.