S02A1277, S02A1346, S02A1349. THE STATE v. LEJEUNE; and vice versa.
(576 SE2d 888)

CARLEY, Justice.
Michael B. Lejeune is charged with malice murder, felony murder, aggravated assault, concealing the death of another, and possession of a firearm during the commission of a felony. The State is seeking the death penalty. We have consolidated three separate appeals arising from pretrial rulings. In Case Number S02A1277, the State appeals from the trial court's grant of a motion to suppress the evidence seized from Lejeune's apartment due to an invalid search warrant. In Case Number S02A1346, a granted interim review, Lejeune appeals from the trial court's denial of a motion to suppress the evidence seized from his automobile during a warrantless search. In Case Number S02A1349, Lejeune appeals from the trial court's denial of his plea of former jeopardy and its refusal to quash the second indictment.

*Case Numbers S02A1277 and S02A1346*

It is necessary to recite the evidence presented to the trial court before we address the legality of the searches of Lejeune's apartment and car. On December 28, 1997, the police in Forsyth County discovered a dismembered torso, legs, and arms burning in a cemetery. The head was missing and has never been recovered. From tattoos and other clues, the police learned that the dead man was Ronnie Allen Davis. Davis was last seen alive at an apartment in Fulton County belonging to Lejeune and his girlfriend, Rekha Ananda Anand, who sold cocaine from the apartment. Davis' roommate told the police that he dropped Davis off at Lejeune's apartment on December 27. The police interviewed Lejeune twice inside his apartment in Janu-

ary 1998, and Lejeune told them Davis had come by, bought some drugs, made a phone call, and was then picked up by a person who did not come to the door. Lejeune was cooperative during both interviews.

On January 19, 1998, an attorney called the police and said that he had a client with information about the Davis homicide. The client was Kenneth Vaughn, allegedly a friend of Lejeune. Vaughn was apparently interested in the $10,000 reward for information about the case. The police had noticed Vaughn sitting in a car in Lejeune's parking lot one of the times they went to interview Lejeune. Vaughn told the police that Lejeune gave him the following account of Davis' death: Davis was at Lejeune's apartment on December 27. He owed Lejeune money that he could not pay, and his behavior was annoying Lejeune. Using his .380 caliber pistol, Lejeune shot Davis once in the head, killing him. Lejeune and Ms. Anand then tried to move the body. Because it was very heavy, they bought a hand saw and dismembered it. They wrapped the body parts in plastic bags and placed them in Lejeune's white Toyota Corolla. They bought gasoline and drove to the cemetery in Forsyth County. Apparently knowing something about ballistics evidence, they decided to keep the head, which still contained the bullet, and burn the rest of the body. They kept the head for two more days and then disposed of it at Lake Lanier. Vaughn told the police that he had since been inside Lejeune's apartment and that Lejeune had shown him bloodstains on the carpet. The police had Vaughn make a "controlled call" to Lejeune with officers listening. However, the record does not contain any evidence about what was discussed because, at the suppression hearing, the State did not elicit the substance of the "controlled call."

The police sought a search warrant for Lejeune's apartment. The supporting affidavit generally recited only what Vaughn had told the police, and did not mention a "controlled call." The police served the warrant at 12:05 a.m. on January 21, 1998, arrested Lejeune and Ms. Anand, and searched their apartment. Lejeune's white Corolla was legally parked in a space in the apartment complex parking lot. Despite not having a search warrant for the car, the police placed it on a flat-bed wrecker and took it to the GBI Crime Lab in DeKalb County. At the suppression hearing, a police witness testified that the officers seized the Corolla because they did not want the vehicle to be tampered with or any evidence inside to be destroyed. About 36 hours later, on January 22, the police sought and obtained a search warrant for the car from a Fulton County magistrate even though the vehicle was in DeKalb County.

1. The trial court found that the affidavit supporting the apartment search warrant was insufficient to establish probable cause. See *Gary v. State*, 262 Ga. 573, 576-578 (422 SE2d 426) (1992); *State*

*v. Stephens*, 252 Ga. 181 (311 SE2d 823) (1984). The affidavit was composed almost entirely of Vaughn's assertion that Lejeune had confessed to him. Although Vaughn was a known informant, nothing in the affidavit supported his credibility or corroborated his information. The affidavit does not detail any of his past performance as an informant or any efforts by the police to verify Vaughn's information independently. As previously stated, the affidavit did not mention the "controlled call." The affiant testified at the suppression hearing that the magistrate was not presented with information other than that contained in the affidavit. On appeal, the State argues that the affidavit supported Vaughn's veracity because some of his information was not available to the general public. However, this assertion was not included in the affidavit, and the State did not show the trial court what Vaughn knew that was not public information. The affidavit also omitted the facts that Vaughn was motivated to come forward by reward money and that he was a drug dealer who had a previous altercation with the victim.

> In determining whether an affidavit sufficiently establishes the probable cause necessary for issuance of a warrant, we employ the "totality of the circumstances" analysis . . . , with the admonition that "(p)rudence counsels that [this analysis] be considered as the *outer limit* of probable cause." [Cit.] (Emphasis in original.)

*Gary v. State*, supra at 577. See also *Illinois v. Gates*, 462 U. S. 213, 238 (III) (103 SC 2317, 76 LE2d 527) (1983); *State v. Stephens*, supra at 184.

> The magistrate's task in determining if probable cause exists to issue a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information*, there is a fair probability that contraband or evidence of a crime will be found in a particular place." [Cit.] (Emphasis supplied.)

*DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997). This Court "has cautioned attesting officers and magistrates to 'make every effort to see that supporting affidavits reflect the maximum indication of reliability. . . .' [Cit.]" *Gary v. State*, supra at 577. The affidavit supporting the application for a search warrant for Lejeune's apartment did not contain any information corroborating Vaughn's veracity and, therefore, did not reflect the minimum required level of reliability. Since the affidavit was composed almost

exclusively of the unsupported hearsay of Vaughn, we find that the magistrate did not have a substantial basis for concluding that probable cause existed. See *Gary v. State*, supra at 577. The trial court did not err by suppressing the evidence seized pursuant to the apartment search warrant. OCGA § 17-5-30 (b); *Gary v. State*, supra at 577-578.

2. The trial court also ruled, however, that the State's seizure and subsequent search of Lejeune's automobile was proper without a warrant under the "automobile exception" to the warrant requirement. See *Pennsylvania v. Labron*, 518 U. S. 938 (116 SC 2485, 135 LE2d 1031) (1996). As stated above, Lejeune's car was legally parked at the apartment complex when the police took it to DeKalb County. The State concedes that the search warrant for the automobile was invalid because it was issued by a Fulton County magistrate when the car was located outside the county. *State v. Kirkland*, 212 Ga. App. 672 (442 SE2d 491) (1994). After obtaining the invalid search warrant, the police searched the car. There is no evidence that this search was valid as an inventory search or as incident to the arrest. See *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981); *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976); *Tutu v. State*, 252 Ga. App. 12, 13 (1) (555 SE2d 241) (2001); *Scott v. State*, 232 Ga. App. 337 (1) (501 SE2d 255) (1998).

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v. Dyson*, 527 U. S. 465, 466 (119 SC 2013, 144 LE2d 442) (1999). The "automobile exception" to the search warrant requirement is premised upon two characteristics of automobiles. One characteristic is their "ready mobility." *Pennsylvania v. Labron*, supra at 940; *California v. Carney*, 471 U. S. 386, 390-391 (II) (105 SC 2066, 85 LE2d 406) (1985). If the police have probable cause, they may search a vehicle without a warrant because " 'the opportunity to search is fleeting since a car is readily movable.' [Cit.]" *California v. Carney*, supra at 391 (II). If the police had to take the time to secure a warrant, the evidence or contraband would probably vanish. The second characteristic upon which the automobile exception is based is the diminished expectation of privacy in a car. *California v. Carney*, supra at 391-392 (II). Automobiles are subject to pervasive governmental regulation and control, especially with regard to safety and licensing, and the "public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental need for regulation." *California v. Carney*, supra at 392 (II). However, the "automobile exception" cases do not hold that a search warrant is *never* needed to search a car. There is an automobile exception to the search warrant requirement, not an exemption. Otherwise, the Supreme Court of the

United States would have held that the police would not, under any circumstances, need to obtain a search warrant for an automobile, provided they have probable cause for the search. Instead, the Supreme Court explained how ready mobility and the diminished expectation of privacy in an automobile delineate the circumstances of a permissible warrantless search:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes – temporary or otherwise – the two justifications for the vehicle exception come into play.

*California v. Carney*, supra at 392-393 (II). See also *Coolidge v. New Hampshire*, 403 U. S. 443, 458-464 (II) (B) (91 SC 2022, 29 LE2d 564) (1971) (despite the existence of probable cause, the warrantless seizure of a suspect's car from his driveway and its later search at the police station held to be unconstitutional because "automobile exception" to the warrant requirement not met). If the police have probable cause to search a car under the aforementioned circumstances, "the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable." *California v. Carney*, supra at 393 (II). We conclude that the automobile exception does not apply where, as here, the suspect's car was legally parked in his residential parking space, the suspect and his only alleged cohort were not in the vehicle or near it and did not have access to it, and the police seized the automobile without a warrant, placed it on a wrecker and hauled it away to be searched at a later date. See *California v. Carney*, supra; *Coolidge v. New Hampshire*, supra.

Moreover, only the prior approval of a magistrate is waived when a warrantless search is conducted under the automobile exception. The search must otherwise be such that a magistrate could authorize. *California v. Carney*, supra at 394 (III). A warrantless search under the automobile exception "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *United States v. Ross*, 456 U. S. 798, 809 (II) (102 SC 2157, 72 LE2d 572) (1982). As previously established in Division 1, the affidavit supporting the search warrant for Lejeune's apartment, which was identical to the supporting affidavit for the invalid January 22 search warrant for the car, was inadequate because it failed to establish Vaughn's reliability. The trial court, however, found probable cause to seize and search the car, not only because of Vaughn's information in the affidavit supporting the apartment search warrant, but also because the police knew about

the "controlled call" which was not mentioned in the affidavit. At the hearing on the motions to suppress, the officers mentioned the "controlled call," but no testimony was elicited regarding what Lejeune said during the call. Thus, there is no basis in the record for the trial court's finding that the "controlled call" corroborated Vaughn and supported probable cause for the automobile search. The probable cause determination to support a warrantless search under the automobile exception "must be based on objective facts that could justify the issuance of a warrant by a magistrate." *United States v. Ross*, supra at 808. Such facts are not in the record, and we cannot infer their existence. We therefore conclude that the trial court's order denying the motion to suppress the automobile search was clearly erroneous and that the evidence obtained by the police as a result of this search must be suppressed. See OCGA § 17-5-30 (b); *Brown v. State*, 269 Ga. 830, 831 (2) (504 SE2d 443) (1998).

### *Case Number S02A1349*

3. On May 12, 1999, the trial court quashed the first bill of indictment charging Lejeune with murder and the other offenses because one of the grand jurors was not qualified to serve. On the next day, the State filed a notice of appeal from this order. On May 14, while the State's appeal was pending, the Fulton County grand jury again indicted Lejeune. He moved to quash the second bill of indictment, on the ground that the trial court was divested of jurisdiction due to the pending appeal. At a hearing on the motion to quash, the State requested that it be allowed to enter a nolle prosequi on the second bill of indictment to avoid the operation of OCGA § 17-7-53.1, which bars the State from continuing to prosecute a defendant if the trial court has twice quashed the charges against him. The trial court permitted the State to enter a nolle prosequi over Lejeune's objection. The State then withdrew its appeal of the order on the first indictment and sought and obtained a third indictment of Lejeune. Lejeune filed a plea of former jeopardy based upon OCGA § 17-7-53.1, contending that the trial court should have quashed the second bill of indictment and dismissed his case. The trial court denied the plea of former jeopardy and Lejeune appeals.

4. The trial court has discretion to order the entry of a nolle prosequi, instead of quashing the indictment, to avoid the application of OCGA § 17-7-53.1. See *Gourley v. State*, 268 Ga. 235 (1) (486 SE2d 342) (1997).

Section 17-7-53.1 acts as a bar to prosecution on a third indictment for the same offense if the trial court has quashed two prior indictments in response to specific mat-

ters raised by either the defendant or on the court's own motion. Nothing in § 17-7-53.1 evidences an intent to include actions initiated by the State in the enumerated matters giving rise to application of the statutory bar to future prosecution.

*Gourley v. State*, supra at 236 (1). Only the State may initiate a nolle prosequi order. *Redding v. State*, 205 Ga. App. 613, 614-615 (2) (423 SE2d 10) (1992). Therefore, the bar to further prosecution set forth in OCGA § 17-7-53.1 is inapplicable to the present case. See *Gourley v. State*, supra at 236 (1); *Redding v. State*, supra at 615 (2). The filing of the notice of appeal did not divest the trial court of jurisdiction to entertain and grant the State's petition for a nolle prosequi order. See *Strickland v. State*, 258 Ga. 764, 765 (1) (373 SE2d 736) (1988); *Waters v. State*, 174 Ga. App. 438, 439 (1) (330 SE2d 177) (1985). Accordingly, the trial court correctly denied the plea of former jeopardy.

*Judgments affirmed in Case Nos. S02A1277 and S02A1349. Judgment reversed in Case No. S02A1346. All the Justices concur.*

DECIDED FEBRUARY 10, 2003.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellant.
*Brian Steel, August F. Siemon III*, for appellee.