*638
 
 SEARS, Presiding Justice.
 

 Michael B. Lejeune is accused of malice murder committed in December 1997, after which he allegedly cut up the victim's body and burned it in a cemetery. The State is seeking the death penalty. Lejeune has not been tried yet, and Case Nos. S04A0115 and S04A0116 are appeals from rulings on pretrial motions. The same prosecution generated an appeal to this Court last year.
 
 [1]
 
 In that case, the trial court granted Lejeune's motion to suppress blood evidence found in a search of his apartment, and this Court affirmed because the supporting affidavit for the search warrant lacked probable cause.
 
 [2]
 
 The Court reversed the trial court's denial of Lejeune's motion to suppress the warrantless search of Lejeune's car under the automobile exception to the search warrant requirement, meaning that blood evidence in the car's trunk seized during that search was also inadmissible.
 
 [3]
 

 The instant cases stem partly from the previous holdings on the motions to suppress. In Case No. S04A0115, the State appeals from the trial court's granting of Lejeune's motions to suppress the results of the new searches of Lejeune's apartment and parents' house conducted pursuant to fresh search warrants. In Case No. S04A0116, Lejeune appeals the denial of his plea in bar based upon the doctrines of res judicata, collateral estoppel, and law of the case. He argues that because there had already been an appellate decision holding that the evidence obtained from Lejeune's former apartment and car was inadmissible, the State was barred from re-litigating the admissibility of evidence obtained from those places despite the new search warrants.
 

 Case No. S04A0115
 

 In 2003, after this Court handed down its decision in
 
 LeJeune,
 
 supra, Rekha Anand, Lejeune's former co-indictee girlfriend, pled guilty to concealing the death of another. She made a statement and agreed to testify on behalf of the State at Lejeune's trial. In her statement,
 

 **750
 

 she said that she was in the apartment when Lejeune shot Ronnie Davis in the head, that she heard the shot and saw Lejeune holding the gun, and that he told her he had done it. Lejeune cut up the body, staining the carpet with blood, and they placed the body parts in Lejeune's Toyota Corolla. They drove to the cemetery and burned the body parts, but they kept the head because the bullet was still inside it. They took the head to Lejeune's parents' house on Lake Lanier, where Lejeune placed it in a basement vise and tried to extract the bullet. He was unsuccessful, so he placed the head in a bucket, poured cement into it, and dumped it in Lake Lanier. Some of Anand's statement corroborated information provided by Kenneth Vaughn, a previous informant in the case, and information obtained
 
 *640
 
 through a "controlled call," wherein the police overheard her and Lejeune before their arrest make incriminating comments about cleaning blood out of the apartment carpet. The State gave Anand's statement and the case file, with all the evidence and information pertaining to the suppressed searches redacted out, to GBI Special Agent Lang, who was uninvolved in the previous investigation of the case. Agent Lang was generally aware that prior searches in the case had been suppressed, but he was not told about any evidence that had been seized or where he should look. Agent Lang believed that blood evidence might still be present in the apartment and the car trunk because blood evidence does not degrade when protected from the elements. Similarly, he believed that some blood and tissue from the victim's head might have transferred to the vise grip and might still be present on the vise and basement floor in Lejeune's parents' house. He consulted with a blood expert, Dr. Henry Lee, who supported this theory. In May 2003, he obtained supporting affidavits, actually written by another GBI agent, and sought search warrants from judicial officers in Fulton County (for the apartment), DeKalb County (for the car), and Hall County (for Lejeune's parents' house). The search warrants were granted and blood evidence was obtained from all three locations. Lejeune moved to suppress the evidence seized pursuant to these searches, and the trial court granted the motions with regard to the Fulton and Hall County search warrants. The State appeals.
 

 1. The trial court suppressed the blood evidence seized in the 2003 search of Lejeune's former apartment in Fulton County
 
 [4]
 

 **751
 

 because it determined that the Fulton County magistrate who issued the search warrant was acting without jurisdiction. The trial court found that the Fulton County magistrate lacked jurisdiction to issue the search warrant because of Uniform Superior Court Rules 3.2 and 3.3, which govern case assignment and the trial court's exclusive control of those cases assigned to it. Uniform Superior Court Rule 3.2 specifies that all companion and related actions involving the same parties, subject matter, or factual issues, shall be assigned to the same judge. Uniform Superior Court Rule 3.3 states that the judge to whom a case is assigned "shall have exclusive control of such action[.]" The trial court reasoned that, once Lejeune had been indicted and the case had been assigned to the trial court, no other Fulton County court had jurisdiction to hear any part of the case, including an application for a search warrant.
 
 [5]
 
 Therefore, according to the trial court, the search warrant was void because the Fulton County magistrate was without jurisdiction to issue it.
 
 [6]
 

 We conclude that this ruling was error. While the Georgia Constitution states that superior courts have exclusive jurisdiction "over trials in felony cases,"
 
 [7]
 
 Georgia statutes vest numerous lesser courts, including magistrate courts, with the jurisdiction to hear applications for search warrants and issue search warrants upon a finding of probable cause.
 
 [8]
 
 The constitutional requirement that a neutral and detached judicial officer determine the sufficiency of probable cause contained in a search warrant application functions as a check on the judgment of
 
 *641
 
 police officers "`engaged in the often competitive enterprise of ferreting out crime.'"
 
 [9]
 
 There is no constitutional impediment to the General Assembly's designating which judicial officers may provide this check
 
 [10]
 
 and no indication in the Constitution or a statute that a judicial officer's authority to do so is limited by a criminal case's status in the superior court. Moreover, any rule that would require police officers to seek search warrants only from the superior court after indictment would result in different procedures for seeking search warrants depending on the location of the place to be searched. The authority of any judicial officer, including the superior
 

 **752
 

 court, to issue a search warrant is limited to places within that court's territorial jurisdiction.
 
 [11]
 
 If a case is indicted, the police would still have to apply for search warrants with judicial officers other than the superior court if the location to be searched is outside the superior court's judicial circuit.
 
 [12]
 
 During their investigation, the police would also be required to monitor each case's status to determine if it has reached indictment. We see no reason to further complicate the procedures for applying for a search warrant. Therefore, we reverse the trial court's ruling that the Fulton County magistrate lacked jurisdiction to issue a Fulton County search warrant because Lejeune had been indicted and the case assigned to the superior court.
 

 2. In May 2003, the police sought a search warrant for Lejeune's parents' house in Hall County, and the supporting affidavit for the search warrant listed information provided by Ms. Anand about Lejeune taking the head into the basement there and allegedly placing the head into a vise grip in an attempt to extract the bullet. The affidavit also stated that there was a reasonable belief that blood evidence would still be found in the basement and on the vise because blood does not degrade when protected from the elements. The Hall County judge granted the search warrant and the police searched the basement and vise and found blood evidence. They also seized the vise.
 

 Lejeune moved to suppress the results of this search, alleging that the information about the vise was stale because there was no information provided in the affidavit that indicated that the vise would still be there after five years. The trial court found probable cause for the police to search the house for blood, and it denied the motion to suppress the blood evidence found in the parents' basement. However, it granted Lejeune's motion to suppress the vise and blood evidence found on the vise because the information contained in the affidavit about the vise was stale. The State appeals this ruling.
 

 Because there was probable cause to authorize the search for blood evidence in the house, the police were legally permitted to be inside the basement and reasonably permitted to look on surfaces where blood might be located, including the vise.
 
 [13]
 
 Any blood evidence uncovered as a result of the swabbing of the vise is admissible.
 
 [14]
 

 **753
 

 We also conclude that the information about the vise contained in the supporting affidavit for the search warrant was not stale.
 

 "The ultimate criterion in determining the degree of evaporation of probable cause... is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and
 

 *642
 

 calendar but of variables that do not punch a clock: the character of the crime ..., of the criminal ..., of the thing to to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later."
 
 [15]
 

 A vise is not perishable or consumable, and it is of continuing utility to the owner. It is generally affixed to a workbench or table, and its placement is usually intended to be permanent. The owners of the house had not changed in the five years since Ms. Anand claimed that the vise had been used, and it was not unreasonable to expect the vise to still be there.
 
 [16]
 
 It is the task of a reviewing court to simply "ensure that the magistrate had a `substantial basis for ... conclud[ing] that probable cause existed[,]'"
 
 [17]
 
 and, contrary to the trial court's finding, the evidence showed that the magistrate had a substantial basis for concluding that the vise would still be in the house. Therefore, the search warrant properly authorized the seizure of the vise, which is admissible at trial.
 

 Case No. S04A0116
 

 3. Lejeune claims that the trial court erred by denying his plea in bar based upon the doctrines of res judicata, collateral estoppel, and law of the case. Lejeune argued that this Court had already affirmed the suppression of blood evidence taken from Lejeune's former apartment
 

 **754
 

 and former car
 
 [18]
 
 and that the State was, therefore, precluded from revisiting the legality of these searches. Lejeune's argument ignores the fact that the 2003 searches were different searches from the 1998 searches and the blood evidence seized in 2003 was different from the blood samples found and seized in 1998. The State did not try to re-litigate the admissibility of the blood samples already in its possession from 1998; the police obtained fresh search warrants based upon an independent source and seized new blood samples. We conclude that the trial court correctly found that Ms. Anand was an independent source and that the litigation of the 2003 searches was not barred.
 

 A.
 
 Ms. Anand was an independent source.
 
 The trial court found that Ms. Anand was an independent source whose information, when coupled with information previously provided by other sources independent of the illegality of the 1998 searches of the car and apartment, provided sufficient probable cause to authorize the issuance of the 2003 search warrants. Lejeune argues that Ms. Anand was not a true independent source because, as a co-indictee also facing a murder charge, she had a motive to give the State her statement, she was available to the State before 2003 because it could have offered her immunity, and she was privy to all the discovery in the case, including the suppressed evidence, which may have tainted her information.
 

 The exclusionary rule prohibits the introduction of evidence seized during an unlawful search, of testimony concerning knowledge acquired from that unlawful search, and of derivative evidence that flowed from the unlawful search.
 
 [19]
 
 It operates as a deterrent to unlawful conduct by the police. However, suppressed evidence may still be admissible under the independent source rule if the police can show that they obtained it by a means untainted by and unrelated to the initial illegality.
 
 [20]
 
 The independent source
 
 *643
 
 rule stems from a practical, public policy reason:
 

 "[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a
 
 worse,
 
 position than they would have been in if no police error or misconduct had occurred ... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a
 

 **755
 

 worse position than they would have been in absent any error or violation. [Cit.]"
 
 [21]
 

 Put another way, evidence suppressed because of an illegal search does not become "sacred and inaccessible;"
 
 [22]
 
 if the police can legally arrive at the evidence another way, without reliance on the illegal source, then the evidence may be admissible.
 
 [23]
 

 In this case, the 1998 searches of the car and apartment were determined to be illegal because they were not supported by probable cause. The affidavit supporting the apartment search warrant contained only the unsupported hearsay of informant Kenneth Vaughn and lacked information attesting to his credibility.
 
 [24]
 
 Although the State possessed evidence of the "controlled call," it was not included in the application for the apartment search warrant or presented at the hearing on the motion to suppress the car search. Therefore, the warrantless search of the car was also lacking in probable cause.
 
 [25]
 
 In 2003, after this Court's decision, the investigative file, with all the information obtained from the illegal searches redacted out, was handed to GBI Special Agent Lang, who had not been previously involved in the case and was unaware of the evidence that had been suppressed. Ms. Anand also provided her statement, which the police could not have earlier obtained, incriminating Lejeune and providing details about the killing and the disposal of the body. Agent Lang obtained fresh search warrants for the car and apartment based upon Anand's information, the controlled call, and Vaughn's previous statement, which the trial court concluded was sufficient to provide probable cause to authorize the search warrants. Although Ms. Anand was privy to the discovery in this case and had a motive to provide the statement, there was sufficient evidence for the trial court to find that her statement was untainted by her knowledge of the discovery and involved only her observations of the crimes before her arrest. The trial court did not err by finding that she was an independent source and that the 2003 warrants were valid, supported by probable cause, and obtained using information untainted by the previous illegality.
 
 [26]
 

 B.
 
 Litigation of the 2003 searches was not barred.
 
 Lejeune claims
 

 **756
 

 that the trial court was precluded from rehearing the issue of the admissibility of the blood evidence from Lejeune's former car and apartment. The trial court rejected his plea in bar. This ruling was not error. Lejeune has never been put to trial, so jeopardy has not attached.
 
 [27]
 
 The doctrines of collateral estoppel, res judicata, and law of the case do not apply either. All three doctrines require that the same issue had been actually litigated and had been decided or could have been decided in prior proceedings between the parties.
 
 [28]
 
 The 2003 searches were conducted
 
 *644
 
 pursuant to new search warrants based upon some new information different from the information provided in 1998. The information used to support the 2003 searches was independent from the illegality of the 1998 searches. The blood swabs obtained from the car and apartment in 2003 were wholly different from the blood swabs obtained from those places in 1998.
 

 The evidence produced in the second search was not the same evidence produced in the first search, [and] there is no showing that the evidence produced in the second search was in any way dependent on the evidence produced in the first search ... We are aware of no authority... which would prohibit a second search under a second warrant.
 
 [29]
 

 The searches were different and the evidence seized was different.
 
 [30]
 
 Moreover, the fact that there has been an earlier appeal does not supersede the independent source rule. In
 
 United States v. Mulder,
 

 [31]
 
 hotel employees seized a duffel bag that was left in a room by an occupant, but not abandoned. It contained thousands of pills that the police sent to a laboratory, which determined them to be illegal drugs. The district court found that the warrantless laboratory testing of the pills did not exceed the scope of the private search, but the Ninth Circuit Court of Appeals reversed and suppressed the evidence on the ground that the warrantless search of the pills was illegal.
 
 [32]
 
 The police then applied for a search warrant to test the pills still in
 

 **757
 

 their possession and based the warrant application on information independent from the illegal search. The district court upheld the second search and the Ninth Circuit affirmed:
 

 The [United States Supreme] Court stated in
 
 Murray
 
 that the government should not "be placed in a worse position than it otherwise would have occupied" because of the exclusionary rule. [Cit.] Obviously an appeal based on the exclusionary rule would be included in this admonishment.
 
 [33]
 

 We therefore conclude that the trial court correctly determined that litigation over the 2003 searches was not barred for the reasons stated by Lejeune.
 

 Judgment reversed in Case No. S04A0115. Judgment affirmed in Case No. S04A0116.
 

 All the Justices concur.
 

 State v. Lejeune,
 

 276 Ga. 179
 
 ,
 
 576 S.E.2d 888
 
 (2003).
 

 Id. at 180-182
 
 (1),
 
 576 S.E.2d 888
 
 .
 

 Id. at 182-184
 
 (2),
 
 576 S.E.2d 888
 
 .
 

 The searches of the apartment and the car formerly possessed by Lejeune occurred more than five years after he had been jailed on the murder charge. There was evidence that there had been apartment tenants and car owners unconnected to Lejeune in the interim, and there was no evidence that Lejeune had any expectation of privacy in either place. However, for reasons unknown to this Court, the State stipulated that Lejeune had standing to challenge these searches, and we are therefore constrained to accept that he did.
 

 See USCR 3.2 and 3.3; 1997 Op. Atty. Gen. 97-19 (once the clerk of the superior court files an indictment, the superior court has exclusive jurisdiction of the case and the magistrate court may not set or amend bonds, unless the superior court invokes its authority to delegate concurrent jurisdiction to the magistrate court).
 

 See
 
 State v. Kirkland,
 

 212 Ga.App. 672
 
 , 673,
 
 442 S.E.2d 491
 
 (1994) (a search warrant issued by a court without jurisdiction is a nullity).
 

 Ga. Const. Art. VI, Sec. IV, Para. I.
 

 OCGA §§ 17-5-21; 17-7-20. See also Ga. Const. Art. VI, Sec. III, Para. I ("The magistrate... courts shall have uniform jurisdiction as provided by law.").
 

 Coolidge v. New Hampshire,
 

 403 U.S. 443
 
 , 449,
 
 91 S.Ct. 2022
 
 ,
 
 29 L.Ed.2d 564
 
 (1971), quoting
 
 Johnson v. United States,
 

 333 U.S. 10
 
 , 14,
 
 68 S.Ct. 367
 
 ,
 
 92 L.Ed. 436
 
 (1948).
 

 See
 
 Johnson v. State,
 

 111 Ga.App. 298
 
 , 301-302,
 
 141 S.E.2d 574
 
 (1965).
 

 See
 
 Kirkland,
 

 supra
 
 (Atlanta City Court judge has no jurisdiction to issue a search warrant for a location in Coweta County);
 
 Campbell v. State,
 

 207 Ga.App. 366
 
 , 367-368(2),
 
 428 S.E.2d 111
 
 (1993);
 
 Allison v. State,
 

 129 Ga.App. 364
 
 , 365-366(3),
 
 199 S.E.2d 587
 
 (1973) (superior court judge authorized to issue a search warrant for any county in his judicial circuit); OCGA § 15-6-23.
 

 See
 
 Allison,
 
 supra; OCGA § 15-6-23.
 

 See
 
 Moss v. State,
 

 275 Ga. 96
 
 , 104(14),
 
 561 S.E.2d 382
 
 (2002).
 

 See
 
 id.
 
 Although it would seem that the vise must have been in plain view, the State never argued the plain view doctrine to the trial court and we therefore cannot consider it as a basis for reversing the suppression of the vise itself.
 
 State v. Tye,
 

 276 Ga. 559
 
 , 562(3),
 
 580 S.E.2d 528
 
 (2003).
 

 Tuzman v. State,
 

 145 Ga.App. 761
 
 , 765(2),
 
 244 S.E.2d 882
 
 (1978), quoting
 
 Andresen v. State,
 

 24 Md.App. 128
 
 , 172,
 
 331 A.2d 78
 
 (1975).
 

 See
 
 Tuzman,
 
 supra.
 

 Gary v. State,
 

 262 Ga. 573
 
 , 577,
 
 422 S.E.2d 426
 
 (1992), quoting
 
 Illinois v. Gates,
 

 462 U.S. 213
 
 , 238-239,
 
 103 S.Ct. 2317
 
 ,
 
 76 L.Ed.2d 527
 
 (1983).
 

 LeJeune,
 

 276 Ga. 179
 
 ,
 
 576 S.E.2d 888
 
 .
 

 See
 
 Murray v. United States,
 

 487 U.S. 533
 
 , 536-537,
 
 108 S.Ct. 2529
 
 ,
 
 101 L.Ed.2d 472
 
 (1988).
 

 Id. at 537-538
 
 ,
 
 108 S.Ct. 2529
 
 .
 

 Id. at 537
 
 ,
 
 108 S.Ct. 2529
 
 .
 

 Silverthorne Lumber Co. v. United States,
 

 251 U.S. 385
 
 , 392,
 
 40 S.Ct. 182
 
 ,
 
 64 L.Ed. 319
 
 (1920).
 

 See
 
 Nix v. Williams,
 

 467 U.S. 431
 
 , 441-443(II)(B),
 
 104 S.Ct. 2501
 
 ,
 
 81 L.Ed.2d 377
 
 (1984).
 

 LeJeune,
 
 supra at 180-182(1),
 
 576 S.E.2d 888
 
 .
 

 Id. at 183-184
 
 (2),
 
 576 S.E.2d 888
 
 .
 

 See
 
 Murray,
 

 supra at 542-543
 
 ,
 
 108 S.Ct. 2529
 
 ;
 
 DeYoung v. State,
 

 268 Ga. 780
 
 , 786-787(7),
 
 493 S.E.2d 157
 
 (1997).
 

 See
 
 United States v. Jorn,
 

 400 U.S. 470
 
 , 479(II),
 
 91 S.Ct. 547
 
 ,
 
 27 L.Ed.2d 543
 
 (1971) ("[A] defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts[.]");
 
 Laster v. State,
 

 268 Ga. 172
 
 , 173(1),
 
 486 S.E.2d 153
 
 (1997) (In a jury trial, jeopardy attaches when a jury is impaneled and sworn);
 
 Perkinson v. State,
 

 273 Ga. 491
 
 , 496, n. 3,
 
 542 S.E.2d 92
 
 (2001).
 

 See
 
 Swain v. State,
 

 251 Ga.App. 110
 
 , 113(1),
 
 552 S.E.2d 880
 
 (2001);
 
 Smith v. Airtouch Cellular of Ga.,
 

 244 Ga.App. 71
 
 , 73-74(3),
 
 534 S.E.2d 832
 
 (2000);
 
 Perez v. State,
 

 263 Ga.App. 411
 
 , 412,
 
 588 S.E.2d 269
 
 (2003).
 

 Harris v. State,
 

 260 Ga. 860
 
 , 862(2),
 
 401 S.E.2d 263
 
 (1991).
 

 Compare
 
 Watts v. State,
 

 261 Ga.App. 230
 
 , 234-235(1),
 
 582 S.E.2d 186
 
 (2003), applying res judicata when the litigation involved the same evidence seized and the same search.
 

 889 F.2d 239
 
 (9th Cir.1989).
 

 United States v. Mulder,
 

 808 F.2d 1346
 
 , 1348-1349 (9th Cir.1987).
 

 Mulder,
 

 889 F.2d at 241
 
 .