## A05A0153. PASHA v. THE STATE.
### (616 SE2d 135)

BERNES, Judge.

We granted Pervez Pasha's application for interlocutory review of the Douglas County Superior Court's order denying his special demurrer to the three count indictment and motion to suppress wiretap evidence. For the reasons set forth below, we affirm in part and reverse in part.

The indictment at issue accused Pasha of engaging in a conspiracy to violate Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO Act") (OCGA § 16-14-1 et seq.) (Counts 1 and 2) and theft by receiving stolen property (OCGA § 16-8-7) (Count 3). The alleged offenses arose out of a series of jewelry store robberies committed throughout the southeastern United States.

Count 1 charged Pasha, Cleef Glenn Rainwater, Arthur Ronregus Bailey, and several other co-defendants with conspiracy to violate the RICO Act under OCGA § 16-14-4 (c):[1]

> [F]or that the said accused, in the State of Georgia and County of Douglas, between January 1, 1999 and August 1, 2002 did unlawfully conspire to acquire and maintain, directly and indirectly an interest in an[d] control of personal property, to wit: money, through a pattern of racketeering activity described in Part A of this indictment [i.e., the predicate offenses], and committed overt acts in furtherance of said conspiracy described within this indictment.

Count 2 of the indictment further charged Pasha and his co-defendants with a conspiracy to violate the RICO Act in that they:

---

[1] OCGA § 16-14-4 (c) provides that "[i]t is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code Section." Subsections (a) and (b) provide:

(a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

(b) It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

[I]n the State of Georgia in the County of Douglas, between January 1, 1999 and August 1, 2002, did unlawfully conspire to be associated with an enterprise more particularly described in Part A of this count, and participate in, directly and indirectly, said enterprise through a pattern of racketeering activity more particularly described in Part B of this count [i.e., the predicate offenses].

Insofar as they related to Pasha, Counts 1 and 2 were supported by identical predicate offenses, predicate offenses 1, 2, and 4. Predicate offenses 1 and 2 referred to a June 17, 2002 robbery by sledgehammer of Carlyle & Co., a jewelry store in Pineville, North Carolina, during which Rolex watches were taken. Predicate offense 1 charged the sledgehammer robbery as robbery with a dangerous weapon under North Carolina General Statute § 14-87. Predicate offense 2 charged the robbery as violating the common law of North Carolina.

The six overt acts alleged against Pasha in support of predicate offenses 1 and 2 likewise were identical. In this regard, the indictment set out details about a phone call from Rainwater to Pasha on the day of the sledgehammer robbery during which Pasha agreed to buy the stolen Rolex watches from Rainwater for money. After the transfer took place in Douglas County later that day, Rainwater realized that he had three more Rolexes to sell. As a result, Rainwater made a second telephone call to Pasha on June 17, 2002. The two agreed to meet on the next day in Cobb County, at which time Pasha purchased more Rolex watches for $13,000.

Predicate offense 4 to Counts 1 and 2 detailed a robbery of Rolex watches by sudden snatching at Mayors Jewelers located at the Mall of Georgia on April 26, 2001. Two of the nine overt acts in furtherance of the conspiracy to commit the robbery named Pasha. These described a meeting between Rainwater, Bailey, and Pasha in Douglasville, Georgia, on the day of the Mayors Jewelers robbery during which Pasha agreed to buy the Rolexes. The exchange took place later that day in Fulton County.

Count 3 of the indictment charged Pasha with theft by receiving stolen property in that on June 17, 2002, he unlawfully received and retained a quantity of Rolex watches, which were valued at more than $500. The rolexes had been stolen from Carlyle & Co., a jewelry store in Pineville, North Carolina.

1. Pasha challenges the sufficiency of Counts 1 and 2 of the indictment. He argues that although the indictment charges him with the predicate offenses of robbery with a dangerous weapon, robbery, and robbery by sudden snatching, the allegations contained in the indictment do not support these charges as against him, and thus do not adequately apprise him of the nature of the charges that

he must defend against at trial.[2] We disagree.

When an objection is made to the sufficiency of an indictment, the test is whether the indictment apprises the accused of the charged crime and the manner in which it was committed. *Luttrell v. State*, 176 Ga. App. 508, 509 (4) (336 SE2d 369) (1985). "Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." (Punctuation omitted.) *Simmons v. State*, 174 Ga. App. 171, 172 (3) (329 SE2d 312) (1985), citing OCGA § 17-7-54 (a).

The indictment charging Pasha with two counts of conspiracy to violate the RICO Act is 38 pages long. It sets forth the wide-ranging and highly organized conspiracy in great detail. The indictment clearly gives Pasha notice of the nature of his involvement in the conspiracy; the overt acts attributed to him as advancing the conspiracy; and the underlying predicate offenses which establish racketeering activity. Under these circumstances, we find no fair potential that the indictment, as drafted, might mislead the jury with respect to the racketeering charges brought against Pasha.

Furthermore, while Pasha argues that he was not adequately charged with the predicate offenses, he misapprehends what is central to conspiracy, namely, that each actor in a conspiracy is responsible for the overt actions undertaken by all the other co-conspirators in furtherance of the conspiracy. *Causey v. State*, 154 Ga. App. 76, 79 (2) (267 SE2d 475) (1980). " 'A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy.' " *Burnette v. State*, 241 Ga. App. 682, 683 (527 SE2d 276) (1999), citing OCGA § 16-4-8. "The essence of conspiracy is a common design, and conduct which discloses a common design may give rise to the inference of conspiracy. [Cit.]" *Waldrip v. State*, 267 Ga. 739, 747 (10) (b) (482 SE2d 299) (1997). Thus, Pasha's argument is unavailing, since there is no requirement in a conspiracy case that the State prove that Pasha personally committed the underlying predicate offenses.

---

[2] Pasha also argues that there is a fatal discrepancy between the conspiracy offense as charged in Count 1 and the overt acts for predicate offenses 1, 2, and 4 that pertain to him. Specifically, he argues that Count 1 is insufficient because it charges him with conspiracy to acquire personal property, to wit, money, while the acts supporting the predicate offenses suggest that he took watches, not money. However, Count 1 charges that Pasha conspired "directly *and indirectly*" to obtain money. Furthermore, Count 1 charges Pasha with committing acts in furtherance of the conspiracy, and a jury could conclude that the purchase of the watches furthered the conspiracy, the goal of which was to obtain money. Thus, his argument in this regard is unpersuasive.

For these reasons, the trial court did not err in denying Pasha's special demurrer to the indictment. Pasha's first claim of error, therefore, is without merit.

2. Pasha next contends that the trial court erred in denying his motion to suppress the recordings of the wiretapped telephone conversations with Rainwater on June 17, 2002 and Rainwater's testimony as to the subject matter of those conversations. It is undisputed in the record that the calls were recorded illegally, in that the recordings were made outside the 20-day limit imposed by the predecessor Code section to OCGA § 16-11-64 then in effect.[3] *Dismuke v. State*, 152 Ga. App. 188, 189 (1) (262 SE2d 490) (1979). Accordingly, because the wiretaps were illegally recorded after the wiretap warrant had expired, the trial court erred in failing to suppress the recordings of the wiretapped telephone conversations.

In contrast, the trial court did not err in allowing Rainwater to testify independently as to his conversations with Pasha. Evidence subject to suppression may still be admissible under the independent source rule "if the police can show that they obtained it by a means untainted by and unrelated to the initial illegality." *State v. Lejeune*, 277 Ga. 749, 754 (3) (A) (594 SE2d 637) (2004). Evidence suppressed because of an illegal search does not become "sacred and inaccessible." *Silverthorne Lumber Co. v. United States*, 251 U. S. 385, 392 (40 SC 182, 64 LE 319) (1920). Rather, "if the police can legally arrive at the evidence another way, without reliance on the illegal source, then the evidence may be admissible." *State v. Lejeune*, supra, 277 Ga. at 755 (3) (A), citing *Silverthorne Lumber Co.*, supra, and *Nix v. Williams*, 467 U. S. 431, 441-443 (104 SC 2501, 81 LE2d 377) (1984).

Since the State's affidavit in support of its request for a wiretap warrant made repeated reference to Rainwater, it is apparent that Rainwater's identity was known to the State independent of the wiretapped conversations at issue. Likewise, Rainwater's intimate knowledge of the content of the wiretapped conversations arises from his first-hand participation in those conversations, not from the illegally obtained recordings. While Pasha argues that the State first knew of his involvement because of the tainted wiretaps, "[t]hat the government knew first of the events and activities testified to as result of the wiretaps is not decisive. The testimony constitutes an independent source. [Cits.]" *United States v. Houltin*, 566 F2d 1027, 1031 (5th Cir. 1978); *United States v. Terzado-Madruga*, 897 F2d 1099, 1115 (11th Cir. 1990). Accordingly, because Rainwater's testimony was derived from a source independent of the illegal wire-

---

[3] Effective July 1, 2002, OCGA § 16-11-64 was amended to remove the 20-day limit on the validity of a wiretap warrant.

taps, the trial court did not abuse its discretion in denying Pasha's motion to suppress the testimony.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Miller, J., concur.*

DECIDED JUNE 21, 2005 — ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Drew Findling, Cris E. Schneider,* for appellant.
*David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney,* for appellee.