A10A0277. THE STATE v. PITTMAN.
A10A0278. THE STATE v. COLLINS.
(690 SE2d 661)

BLACKBURN, Presiding Judge.

In this criminal action alleging RICO[1] violations, the State in its appeal of the trial court's grant of defendants' special demurrer argues that the thirteen-page indictment adequately alleged the elements of the two RICO counts. Because the indictment set forth sufficient detail to withstand the special demurrer, we reverse.

In reviewing a ruling on a special demurrer, we apply a de novo standard of review because it is a question of law whether the allegations in the indictment are legally sufficient. See *Geele v. State*.[2] The indictment here alleged two RICO counts: that Steven Pittman and James Collins violated OCGA § 16-14-4 (a) by acquiring money through a pattern of racketeering activity, and that they conspired to violate OCGA § 16-14-4 (a) by devising and executing a fraud scheme, which conspiracy was a violation of OCGA § 16-14-4 (c). The indictment specified 60 predicate acts to support the violation of OCGA § 16-14-4 (a), which acts alleged bank fraud and attempted bank fraud, residential mortgage fraud and attempted residential mortgage fraud, forgery, theft by taking, and theft by deception. The indictment identified 19 separate loan transactions by loan number, date of closing, lender, borrower, and loan amount as the primary bases for the allegations of fraud and theft, describing the fraud and theft as consisting (i) of defendants' misrepresentations to the borrowers that church entities controlled by pastor Collins, which entities would be receiving the funds, would be solely responsible for repaying the loans, and (ii) of defendants' preparing and submitting fraudulent and forged documents (a forged purchase agreement in one transaction and fraudulent sales contracts, loan applications, personal financial statements, and HUD settlement statements in four other transactions) to one lender to persuade it to loan the money to the borrowers.

The conspiracy count alleged an intricate scheme in which Pittman as a bank official for the primary lender and Collins as the church pastor for all of the borrowers jointly used their positions to persuade the lenders and borrowers, through deceitful representations and fraudulent documents, to close the loan transactions, which not only furthered the career of Pittman as a bank official but benefitted Collins personally and as the church pastor through the infusion of cash into the business and church entities he incorpo-

---

[1] OCGA § 16-14-4 (a), (c).
[2] *Geele v. State*, 203 Ga. 369 (2) (47 SE2d 283) (1948).

rated and controlled. As overt acts, the indictment alleged that Collins would identify unsophisticated parishioners and convince them to sign financial documents to obtain money for his church and its programs, misrepresenting to them that they had no personal financial risk since the church and its entities would be solely responsible for repaying the loans. Concealing that the true purpose of the loans was to provide money to Collins personally and to advance Pittman's professional career, both Collins and Pittman would provide false information about the borrowers and related collateral in the financial documents submitted to the lenders, would submit forged documents to the lenders, and would solicit additional victims to repay prior loans. Pittman would use his position at the bank to ensure that the financial transactions were approved and closed. Ten parishioners (identified by name) in nineteen separately-identified loan transactions involving three specified lenders (primarily Pittman's bank) borrowed over $600,000 that went to Collins's church entities.

Pittman specially demurred to the indictment, arguing that it provided insufficient detail to allow him to prepare his defense. The trial court agreed and granted the special demurrer, dismissing the indictment as to both defendants. The State appeals as to Pittman in Case No. A10A0277 and as to Collins in Case No. A10A0278.

OCGA § 17-7-54 describes generally the standard for determining the sufficiency of an indictment: "Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." There is no dispute that the indictment here tracked the language of the relevant statute, which provides:

> (a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.
>
> . . .
>
> (c) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) . . . of this Code section.

OCGA § 16-14-4. Defendants, however, cite to *State v. Delaby*[3] for the propositions that "where the statutory definition of an offense

---

[3] *State v. Delaby*, 298 Ga. App. 723 (681 SE2d 645) (2009).

includes generic terms, the indictment must state the species of acts charged; it must descend to particulars" (punctuation omitted), id. at 725, and that we apply a stricter analysis to indictments challenged by timely-filed special demurrers decided before any trial. Id. at 724. We hold that under the stricter analysis, the indictment gave sufficient particulars to withstand a special demurrer.

Addressing a RICO indictment, *Grant v. State*[4] set forth the relevant standard:

> Due process is satisfied where an indictment puts a defendant on notice of the crimes with which he is charged and against which he must defend. The true test of the sufficiency of the indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal of conviction. . . .
>
> The indictment is read as a whole[,] and one part may incorporate other parts. The two requirements of an indictment are that it definitively inform the accused of the charges against him, so that he may present his defense and avoid surprises at trial, and that it protect the accused against another prosecution for the same offense.

(Citations and punctuation omitted.) See *Delaby*, supra, 298 Ga. App. at 724-725.

In *Grant*, we found that the predicate acts for a RICO indictment were sufficiently described where

> [t]he transactions which the State alleges are criminal racketeering charges are specific timber transactions involving specific persons, places, acreages, deals, and owners. The transactions are specifically identified by the numbered checks representing them; the checks are drawn on a certain bank on a certain date, made payable to a certain person. Although the amount is not stated to the penny in each described check, the check and circumstances of the check are sufficiently described to enable appellants to ascertain the precise amount, and to identify with specific-

---

[4] *Grant v. State*, 227 Ga. App. 88, 91 (1) (488 SE2d 79) (1997).

ity the particular act being prosecuted and thus enable appellants to mount a defense thereto, and to permit them to raise this prosecution as a bar to a future prosecution based on the same act. When the indictment is read as a whole, particular predicate acts are identified by identifying the negotiable instrument appellants received as to each described fraudulent transaction in each named county, and by naming and describing each false deed supporting a transaction.

The indictments set out the alleged offense with sufficient specificity so as to apprise appellants of the particular charges they must meet, and to allow them to plead this prosecution as a jeopardy bar to future prosecution for the same acts.

(Citations omitted.) Supra, 227 Ga. App. at 91-92 (1).

Here, the indictment identifies particular predicate acts by specifying nineteen separate loan transactions involving specific persons, loan numbers, lenders, closing dates, and amounts loaned (to the penny). The indictment describes the criminal predicate acts taken by the defendants such as (i) lying to the borrowers that they would not be personally liable to repay the loans and that Collins's church entities would be solely responsible to repay such, (ii) concealing the true purpose of the loans, (iii) submitting false information on the documents given the lenders, including fraudulent sales contracts, loan applications, personal financial statements, and HUD settlement statements in five specific loans, and (iv) submitting a purchase agreement with three forged signatures on one particular loan. Based on these allegations, the indictment set forth (each time identifying the relevant loans) a total of sixty predicate acts, including fifteen criminal acts of bank fraud,[5] three criminal acts of attempted bank fraud, four criminal acts of residential mortgage fraud,[6] one criminal act of attempted residential mortgage fraud, three criminal acts of forgery in the first degree,[7] fifteen criminal acts of theft by taking[8] from two lenders, three criminal acts of attempted theft by taking from one lender, and sixteen criminal acts of theft by deception[9] from specified parishioners. Defendants conceded below that sufficient particularity existed as to at least the five predicate acts alleging residential

[5] 18 USC § 1344.
[6] OCGA § 16-8-102.
[7] OCGA § 16-9-1 (a).
[8] OCGA § 16-8-2.
[9] OCGA § 16-8-3 (a).

mortgage fraud. We note that the allegations of the fifteen acts of theft by taking tracked the predicate-act language we found sufficient in the RICO case of *Adams v. State*,[10] and that the specificity of the numerous fraudulent financial transactions was similar to that found sufficient as predicate-act language in the two RICO cases of *Adams*, supra, 231 Ga. App. at 280 (1) and *Grant*, supra, 227 Ga. App. at 91-92 (1). Defendants' complaint that the overt acts of the conspiracy lacked particulars ignores our express holding in *Bradford v. State*[11] that "no authority requir[ed] the indictment to set forth the particulars of the overt act" in a conspiracy to commit a crime.

We hold that the indictment here sufficiently described the RICO crimes and related predicate acts so as to inform the defendants of the charges against them and so as to protect them against another prosecution for the same offense. See *Pasha v. State*.[12] Accordingly, we reverse the trial court's judgment granting the special demurrer.

*Judgment reversed in both cases. Barnes and Bernes, JJ., concur.*

DECIDED JANUARY 29, 2010 —
RECONSIDERATION DENIED FEBRUARY 26, 2010.

*Howard Z. Simms, District Attorney, Sharell F. Lewis, Assistant District Attorney*, for appellant.

*Hogue & Hogue, Laura D. Hogue, Jonathan P. Waters*, for appellees.

---

[10] *Adams v. State*, 231 Ga. App. 279, 280-281 (1) (499 SE2d 105) (1998).
[11] *Bradford v. State*, 283 Ga. App. 75, 78 (2) (640 SE2d 630) (2006).
[12] *Pasha v. State*, 273 Ga. App. 788, 790 (1) (616 SE2d 135) (2005).